STATE OF MAINE, By Complaint, *vs.* CHARLES P. DODGE.

Hancock.    Opinion June 17, 1918.

*R. S., Chap. 45, Sec. 30, interpreted.    License fees.    Right of State to demand and impose payment of license fees.    General rule as to right of each State to pass legislation where interstate commerce is indirectly involved.    Right of State to control and protect the property within its borders and to issue licenses for the using thereof.    Burden of proving legislation to be unconstitutional.    General rule as to when laws are discriminatory and become class legislation.*

1.   The provision in R. S., Chap. 45, Sec. 30, relating to the necessity of obtaining a license to transport lobsters beyond the limits of the State is a valid and reasonable provision and in accordance with the Constitution of Maine and the Constitution of the United States.

2.   The imposition of a license fee for smacks or vessels engaged in the lobster fisheries on waters within the jurisdiction of the State, and moving in interstate commerce, if reasonable, is not a burden on interstate commerce.

3.   The general power of police is in the States.   And neither the power itself, nor the discretion to exercise it as need may require can be bargained away by the State.   All that the federal authority can do is to see that the States do not, under cover of this power, invade the sphere of national sovereignty, obstruct or impede the exercise of any authority which the Constitution has confided to the nation, or deprive any citizen of rights guaranteed by the federal constitution.

4.   In regard to the transportation of lobsters beyond the limits of the State, the right to legislate is given even if interstate commerce is indirectly involved, until Congress exercises its authority over the subject.

5.   The Fourteenth Amendment does not prohibit legislation special in character. It does not prohibit a State from carrying out a policy that cannot be pronounced purely arbitrary, by taxation or penal laws.   If a class is deemed to present a conspicuous example of what the legislature seeks to prevent, the Fourteenth Amendment allows it to be dealt with although otherwise and merely logically not distinguishable from others not embraced in the law.

Respondent was arrested for violation of R. S., Chap. 45, Sec. 30. Respondent was arraigned and entered a plea of not guilty; was adjudged guilty and by agreement case was reported to Law Court upon certain stipulations or agreements.   Judgment in accordance with opinion.

Case stated in opinion.

*Fred L. Mason, County Attorney,* for State.

*W. R. Pattangall, and H. E. Locke,* for respondent.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, JJ.

HANSON, J. This case is reported to the Law Court upon the following agreed statement of facts:

"This is a criminal prosecution for breach of Section 30 of Chapter 45 of the Revised Statutes, for the failure of the respondent, Charles P. Dodge, to file bond and receive a license from the Department of Sea & Shore Fisheries to transport lobsters for commercial purposes beyond the limits of the State of Maine in the smack 'Grace M. Cribbey,' said respondent being in control of said smack, and said smack not being a common carrier within the meaning of said Statute.

The respondent, Charles P. Dodge, who is a resident of the State of Maine, on the 20th day of June, A. D. 1917, filed with the Commissioner of Sea & Shore Fisheries at Augusta, an application for a license to transport lobsters in said smack 'Grace M. Cribbey' beyond the limits of the State, together with fee of $5.00 for same, but refused and neglected to file a bond as required by said Statute, although requested so to do by said Commission in his letter of June 20th, A. D. 1917.

On June 26th, A. D. 1917, the Commissioner of Sea & Shore Fisheries received from said respondent an application for a license to transport lobsters within the boundaries of said State of Maine in said smack 'Grace M. Cribbey,' as provided in Section 18 of said Chapter 45 of the Revised Statutes, stating that there had been a change in his plans and asking that the fee of $1.00 for same be taken out of the $5.00 still held by said Commissioner, and the balance returned to him, which was done.

The respondent thereafterwards on the first day of July, A. D. 1917, and on other days between said date and August 11th, A. D. 1917, purchased lobsters of legal length and legally caught in Maine and not having obtained a license or filed a bond in compliance with said Section 30, Chapter 45 of the Revised Statutes, transported them in said smack 'Grace M. Cribbey,' from Stonington in the county of Hancock beyond the limits of the State of Maine, for which offense, he was arraigned before the Western Hancock Municipal

Court on a warrant properly drawn and properly charging the offense of transporting lobsters beyond the limits of the State without a license, whereupon he entered a plea of not guilty, was found guilty, and sentenced to pay a fine of $250 and costs $7.87; from which sentence he appealed to the Supreme Judicial Court for Hancock County.

The sole question raised by the respondent is as to whether or not the provisions of Section 30, Chapter 45 of the Revised Statutes, under which the offense of which he is accused of committing is charged, namely, the provisions relating to the procurement of a license to transport lobsters beyond the limits of the State and requiring the applicant to file a bond as set forth therein as a condition of procuring said license, are valid and in accordance with the provisions of the Constitution of the State of Maine, and the Constitution of the United States.

If, on these facts, judgment is for the State, judgment and sentence of the lower court shall be affirmed, otherwise respondent shall be discharged."

Section 30 of Chap. 45, R. S., reads as follows:

"Sec. 30.   No lobsters shall be transported beyond the limits of this state, whether of legal length or otherwise, except by common carriers as provided in section seventeen, unless by persons licensed to transport lobsters outside the limits of the state under the following conditions:  the commissioner of sea and shore fisheries shall issue a license, which shall not be transferable, to the owner or party in control of any smack, vessel, or other means of transportation, either foreign or domestic, authorizing him to purchase and to transport lobsters within or beyond the limits of the state upon the following conditions:   The license in each instance shall state the name of the smack, vessel or other conveyance to be used in so purchasing or transporting lobsters, and will give no authority to purchase or transport in any other smack, vessel or other conveyance except that named in the license.   The name of the smack, vessel or other conveyance may, however, be changed by the licensee upon application to said commissioner, within the license period, without further charge.   The fee for issuing said license shall be five dollars, and a record shall be kept of the same, similar to that provided for other licenses in section eighteen.   Besides the name of the conveyance, the license shall bear the date of taking effect and the termination

thereof, which last named date shall be the last day of November next after it becomes effective, and shall state that such license, together with the bond hereinafter provided for, shall be forfeited upon the violation of any law of this state relating to lobsters; and it shall further provide that such smack, vessel or other conveyance shall, at all times, be subject to inspection and search by the commissioner of sea and shore fisheries, or his wardens or deputy wardens, with warrant or without, in which inspection and search they shall in no way be obstructed. Before said license is issued, the applicant shall file with the said commissioner a bond in the penal sum of five hundred dollars, conditioned that the same shall be forfeited to the state upon conviction of the licensee of any breach of any laws of this state pertaining to lobsters. All licensees under this section shall be required to load all smacks, vessels or other contrivances within the waters over which this state has jurisdiction, and any licensee loading outside the jurisdictional waters of this state, or who refuses to come within the jurisdictional waters of this state when ordered so to do by the commissioners, or any of his wardens or deputy wardens, shall be deemed to have violated the provisions of this section, and his bond shall be forfeited. Any license issued under this section shall become void on conviction for the breach of any law of this state pertaining to lobsters. No new license shall be issued for a period of one year to any party whose license has been revoked because of such conviction. Any license issued contrary to the provisions of this section is void and of no effect."

Counsel for the respondent in argument says that "various constitutional objections to the admissibility of the statute suggest themselves," and considers them in argument in the following order:

1. Is the commerce clause of the United States Constitution violated?

2. Is the license fee illegally discriminatory?

3. Is the penal liability illegally discriminatory?

4. Is the penalty excessive and unreasonable?

The imposition of a license fee for smacks or vessels engaged in the lobster fisheries on waters within the jurisdiction of the State, and moving in interstate commerce, if reasonable, is not a burden on interstate commerce. *License Cases*, 5 Howard, 504. The general power of police is in the States. *Civil Rights Cases*, 109 U. S., 3; Sup. Ct. Rep., 18. And neither the power itself, nor the discretion

to exercise it as need may require, can be bargained away by the State. *Cooley Const. Limitations,* 7th ed. 831. All that the federal authority can do is to see that the States do not, under cover of this power, invade the sphere of national sovereignty, obstruct or impede the exercise of any authority which the Constitution has confided to the nation, or deprive any citizen of rights guaranteed by the federal constitution. Idem 832. The same authority states the guiding rule upon questions of conflict between federal and State authority, thus,—if the power extends only to a just regulation of rights with a view to the due protection and enjoyment of all, and does not deprive anyone of that which is justly and properly his own, it is obvious that its possession by the State, and its exercise for the regulation of the property and action of its citizens, cannot well constitute an invasion of national jurisdiction, or afford a basis for an appeal to the protection of the national authorities; page 833 and note (a). The right to license is not questioned; and it is not claimed that the license fee is intended for revenue or a tax. License laws are of two kinds; those which require the payment of a license fee by way of raising a revenue, and are therefore the exercise of the power of taxation, and those which are mere police regulations and require the payment only of such license fee as will cover the expense of the license and of enforcing regulation.

This court takes judicial notice that the lobster fisheries is one of the great industries of the State of Maine. It is a part of the sea and shore interests of the State that has been the subject of constant investigation by the law making power for nearly a century, and year by year as the legislature has convened the attention of the representatives has been enlisted in the direction of the best means of fostering the industry and protecting the State against means and methods calculated to impair it. Legislation to this end has been enacted from time to time until it is believed that the regulations now in force are sufficient to meet all reasonable requirements, and fully preserve the interest of all concerned. And this is the stated and accepted policy of the State, founded upon experience and conscientious investigation. Has the State the right to so legislate? The State has the right to legislate in this instance even if interstate commerce is indirectly involved, until Congress exercises its authority over the subject. *Sligh* v. *Kirkwood,* 237 U. S., 58. See *Minnesota Rate Cases,* 320 U. S., 352. If the Legislature has the right to legis-

late for the protection of the fishing industry, it follows that it has the power to prescribe rules and regulation, for the proper execution of the laws deemed necessary. *Cooley Const. Lim.*, 98.

Are the established rules and regulations illegally discriminatory, and the penalty excessive? It needs no citation to support the statement that every person and all property in the State are subject to some restraints and burdens in order to secure the general comfort, health and prosperity of the State. From the beginning, our shore fisheries have been important, and have received from the Executive and Legislative Departments the attention their importance demanded. There have been many branches of the industry, and necessarily as many classes, of those engaged in the various branches. The laws and rules intended to control and regulate the fishing business have been passed for the benefit and regulation of the classes in the conduct of the business of each class. No other method is practicable. It is, then, with a class we are dealing—a class engaged in the lobster fisheries, and so long as the regulation is intended to operate upon the class and does not in its operation discriminate against an individual of that class, but affects all alike, it is lawful. It is clear that the asserted discriminations are within the power of classification which the State has made.

The agreed facts show a deliberate intention to evade or violate the statute, the setting up of the individual will against the clearly expressed judgment of the legislature. The respondent did not file a bond, nor did he pay the five dollars required for the license to do an interstate business. He paid the minimum license and attempted to do the maximum business provided by the regulations, without paying the license or filing the required bond. In other words, the respondent desired to carry on the lobster business at the least expense to himself and that meant practically to disregard the law altogether. The position he takes is against the best interest of the people of the State, while the whole course of legislation has been directed to preventing so far as possible the exercise of such individual practice. That a State may so legislate in the exercise of its highest functions is well settled. "A State may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses, and it may do so none the less that the forbidden act does not differ in kind from those that are allowed. . . . If a class is deemed to present a conspicuous example of what the

legislature seeks to prevent, the 14th Amendment allows it to be dealt with, although otherwise and merely logically not distinguishable from others not embraced in the law." *Hall* v. *Geiger Jones Co.*, 242 U. S., 539. The same principle is stated in another leading case, as follows:—"The Fourteenth Amendment does not prohibit legislation special in character. It does not prohibit a State from carrying out a policy that cannot be pronounced purely arbitrary, by taxation or penal laws. If a class is deemed to present a conspicuous example of what the legislature seeks to prevent, the Fourteenth Amendment allows it to be dealt with although otherwise and merely logically not distinguishable from others not embraced in the law." *Central Lumber Co.* v. *South Dakota*, 226 U. S., 157. "A State which, at its own expense, furnishes special facilities for the use of those engaged in interstate and intrastate commerce may exact compensation therefor; and if the charges are reasonable and uniform they constitute no burden on interstate commerce. The action of the State in such respect must be treated as correct unless the contrary is made to appear. . . . . In view of the many decisions of this court, there can be no serious doubt that where a State at its own expense furnishes special facilities for the use of those engaged in commerce, interstate as well as domestic, it may exact compensation therefor. The amount of the charges and the method of collection are primarily for determination by the State itself; and so long as they are reasonable and are fixed according to some uniform fair and practical standard, they constitute no burden on interstate commerce." *Hendrick* v. *Maryland*, 235 U. S., 611, and cases cited; *Cooley Const. Lim.*, 857.

It is clear that the regulations complained of are reasonable, fair and uniform, and reflect the judgment of those best qualified to settle questions of public policy and police regulations, and it is equally clear that the respondent has failed to bring himself within the rule, that the party assailing the constitutionality of a State police statute must clearly show that it offends constitutional guaranties in order to justify the court in declaring it invalid. *Eubank* v. *City of Richmond*, 226 U. S., 137; *Hendrick* v. *Maryland*, 235 U. S., 611.

The entry will be

　　　　　　　　　　　　　　　　*Judgment for the State.*