State of Maine
*vs.*
The Fantastic Fair and
Karmil Merchandising Corp.
(Two cases)

Cumberland.   Opinion, November 30, 1961.

*Arthur Chapman, Jr., County Atty.,*
*Wayne B. Hollingsworth, Asst. Atty. Gen.,* for the State.

*Robert F. Preti,* for the defendant (Fantastic Fair).
*Harold J. Rubin,* for the defendant
(Karmil Merchandising Corp.).

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN,
DUBORD, SIDDALL, JJ. (WEBBER, J., concurring.)

WILLIAMSON, C. J. On report. These cases involve the
keeping open on Sunday of department stores known as
"The Fantastic Fair" located in South Portland and
"Brunswick Mill Outlet" located in Brunswick. The issues
are the applicability and constitutionality of the Sunday
Closing Law, so-called, enacted in 1961. P. L., 1961, c. 362;
R. S., c. 134, §§ 38, 38-A. Each case is reported to us on
special demurrer to the complaint following appeal to the
Superior Court from a judgment of guilty in the appropri-
ate Municipal Court. One opinion will serve both cases.

The respondents contend that the 1961 Act is unconstitu-
tional on two main grounds; first, that it is discriminatory
and therefore violates the equal protection clauses of the
State and Federal Constitutions, and second, that it is
vague, uncertain, and impossible of interpretation and
therefore violates the due process clauses of both Constitu-
tions. A third point is that local option provision is an un-
constitutional delegation of legislative authority. Minor
differences in the presentation of the local option issue by
Fantastic Fair and Brunswick Mill Outlet will be later
noticed. A fourth issue is the contention of Fantastic Fair

that if the 1961 Act is constitutional, then "it is exempt from the operation of said law by reason of the fact that it falls within the definition of a restaurant, drug stores, book stores, and/or a store selling gifts or souvenirs, and/or a 'work of necessity.'" Brunswick Mill Outlet makes the same contention without, however, including work of necessity."

Two issues which have often arisen in connection with Sunday closing legislation are eliminated by agreement. It is conceded that the Sunday Closing Law is not in violation of the constitutional restrictions against establishment of religion and also that the Legislature has the authority to enact legislation providing for a day of rest. *Lena T. Cleveland* v. *City of Bangor,* 87 Me. 259, 32 A. 892; *McGowan, et al.* v. *Maryland,* 366 U. S. 420, 81 S. Ct. 1101; *Two Guys from Harrison-Allentown* v. *McGinley,* 366 U. S. 582, 81 S. Ct. 1135; *Gallagher* v. *Crown Kosher Super Market of Mass.,* 366 U. S. 617, 81 S. Ct. 1122; *Braunfeld, et al.* v. *Brown,* 366 U. S. 599, 81 S. Ct. 1144. The constitutional issues will be tested within the framework of the exercise of the police power by reasonable regulation. *City of Mt. Vernon* v. *Julian,* 17 N. E. (2nd) 52, 119 A. L. R. 747.

We turn first to the question of whether the respondent department stores are within a category exempt from Sunday closing. We proceed under the general rule that we do not reach an issue of constitutionality unless it becomes necessary for decision. If Fantastic Fair (or Brunswick Mill Outlet) is, as it asserts, exempt under the statute, then it has no reason to object to the statute on constitutional grounds.

It is apparent that on the issue of whether either respondent is an exempt store, we must consider like problems of vagueness, uncertainty, and impossibility of interpretation

arising on the issue of due process. If it cannot be determined whether Fantastic Fair (or Brunswick Mill Outlet) in the operation conducted by it on the Sunday in question fell within or without the exemptions, then the statute must be held too vague and uncertain to meet the constitutional requirement of due process.

Fantastic Fair, in light of the complaint, pleadings, and stipulation, kept open on Sunday "a general merchandise Department Store, known as 'The Fantastic Fair.'" The stipulation agreed upon by State and Fantastic Fair reads in part:

> "That the Respondent, on the 11th day of March, 1962, a Sunday, did keep open its place of business to the public. That the Respondent's place of business in South Portland. . . on said day, was a retail store carrying as merchandise for retail sale various kinds and types of drugs and medicines, commonly sold in stores dealing only in drugs and medicines which may be known as 'drug stores'; books, magazines and writing materials, commonly sold in retail stores handling only books, magazines and writing materials, and perhaps being known as 'book stores'; food, which was kept, prepared and served upon the premises in the same manner as a place of business which might be known as a 'restaurant'; and that the Respondent's place of business on said day was a store selling gifts or souvenirs; that in addition to the aforesaid articles and items offered for sale on the premises of the Respondent on said day, the Respondent also offered for sale a general line of men's, women's and children's work clothing and work shoes and boots, as well as a general line of men's, women's and children's dress clothing and dress shoes, other types of wearing apparel, furniture, toys, hardware, including tools and supplies, electrical supplies and other miscellaneous merchandise."

In the Brunswick Mill Outlet case the demurrer reads:

"That the Respondent, on the fifteenth day of April, 1962, a Sunday, did keep open its place of business to the public. That the Respondent's place of business in said Brunswick on said day was a retail store containing various kinds of merchandise, among the merchandise for sale in said place of business of the Respondent were drugs and medicines, commonly sold in drug stores; books, magazines, and writing materials, commonly sold in book stores; food, which was kept, prepared and served upon the premises, the same as in any restaurant; and that the Respondent's place of business on said day was a store selling gifts or souvenirs; that in addition to the aforesaid articles and items sold on the premises of the Respondent, the Respondent also sold other articles such as clothing, wearing apparel, furniture, toys, hardware, electrical supplies, and other general merchandise."

There is no substantial difference in the nature of the stores operated by the respondents.

The Sunday Closing Law, P. L., 1961, c. 362 (R. S., c. 134, §§ 38, 38-A) follows:

"**Sec. 38. Operating business on the Lord's Day and certain holidays.** No person shall on the Lord's Day, Memorial Day, July 4th, November 11th and Thanksgiving Day, as proclaimed by the Governor, keep open his place of business to the public except for works of necessity or charity.

"This section shall not apply to common, contract and private carriers; taxicabs; airplanes; radio and television stations; newspaper publishers; hotels, motels, rooming houses, tourist and trailer camps; restaurants; garages and motor vehicle service stations; retail monument dealers; automatic laundries; grocery stores; drug stores; book stores; stores selling gifts or souvenirs; greenhouses; roadside stands engaged in sale of farm produce or dairy products; public utilities; industries normally kept in continuous operation

including but not limited to pulp and paper plants and textile plants; processing plants handling agricultural produce or products of the sea; ship chandleries; marinas; sports; athletic events; motion picture theaters; musical concerts; religious, educational, scientific or philosophical lectures; scenic, historic, recreational and amusement facilities.

"It is not intended by this section that any business or facility which is exempt from closing on the Lord's Day and the aforementioned holidays shall be permitted to remain open until it has complied with any other provision of this chapter which requires a vote of the municipality.

"Any person violating this section shall be punished by a fine of not more than $100 for the first offense, nor more than $200 for any subsequent offense occurring within one year following a conviction. No complaint charging violation of this section shall issue later than 5 days after its alleged commission."

"**Sec. 38-A. Local option.** In any city or town that shall vote as hereinafter provided, it shall be lawful to keep open to the public on the Lord's Day and aforementioned holidays, other places of business not exempted under section 38. This provision shall not be effective in any municipality until a majority of the legal voters, present and voting at any regular election, so vote. The question in appropriate terms may be submitted to the voters at any such election by the municipal officers thereof, and shall by them be so submitted when thereto requested in writing by 100 legal voters therein at least 21 days before such regular election; nor shall it be effective in any town until an article in such town warrant so providing shall have been adopted at an annual town meeting. When a city or town has voted in favor of adopting the provisions hereof, said provisions shall remain in effect therein until repealed in the same manner as provided for their adoption."

The sense of the statute requires that we read "or" for "and." R. S., c. 10, § 22.

It is immaterial for our purposes that the 1961 statute covers holidays as well as Sundays. We express no opinion whatsoever upon any issues which might arise with reference to holiday closing. It remains convenient, however, to refer to the statute as the "Sunday Closing Law."

We may eliminate from discussion certain categories listed in the statute. "Works of necessity or charity" need not long detain us.

In *State* v. *Morin,* 108 Me. 303, 80 A. 751 (1911), in which a druggist was charged with keeping open his store, the court said, at p. 306:

> "The opening of his store and entering it for the purpose of furnishing a medicine then needed for sickness, would not be keeping open shop within the meaning of the statute; it would not be keeping open shop in a manner to invite trade, or to invite people to enter to transact business, or doing work therein. The opening would only be that the defendant might do an act of necessity or charity —furnish medicine to aid the sick and suffering, not to induce others to enter to trade or transact business."

Not until the 1929 Act, below, were drug stores exempted from the Sunday Closing statute.

The only categories in the statute in which the respondents claim a direct interest are: restaurants, drug stores, book stores, and stores selling gifts or souvenirs. Neither Fantastic Fair nor Brunswick Mill Outlet on the demurrer, pleadings, and stipulations come within any of the other categories, nor does it claim to do so.

A brief review of the Sunday Closing Law without, however, including statutes relating to holidays or the broad

local option provisions, may be of worth in placing the present law in proper perspective.

Sunday closing laws come from the first year of our statehood. In "An Act providing for the due observation of the Lord's day" (Laws 1821, c. IX), the preamble reads:

> "Whereas the observance of the Lord's day is highly promotive of the welfare of a community, by affording necessary seasons for relaxation from labour and the cares of business; for moral reflections and conversation on the duties of life, and the frequent errors of human conduct; for public and private worship of the Maker, Governor and Judge of the world; and for those acts of charity which support and adorn a Christian Society: And whereas some thoughtless and irreligious persons, inattentive to the duties and benefits of the Lord's day, profane the same, by unnecessarily pursuing their worldly business and recreations on that day, to their own great damage, as members of a Christian Society: to the great disturbance of well disposed persons, and to the great injury of the community, by producing dissipation of manners and immoralities of life."

Section 2 of the 1821 Law remained in substance on our statute books until the 1961 Act.

> "That no person or persons whatsoever shall keep open his, her, or their shop, warehouse, or workhouse, nor shall, upon land or water, do any manner of labour, business, or work, (works of necessity and charity only excepted) nor be present at any concert of music, dancing or any public diversion, show or entertainment, nor use any sport, game, play, or recreation, on the Lord's day, or any part thereof, upon penalty of a sum not exceeding six dollars and sixty-six cents, nor less than four dollars for each offence."

In 1929 we find exemptions added for the first time.

> "Sec. 35. Certain business and recreation allowed on Lord's Day. Whoever, on the Lord's

Day, keeps open his shop, workhouse, warehouse or place of business, travels, or does any work, labor or business on that day, except works of necessity or charity; uses any sport, game or recreation; or is present at any dancing, public diversion, show or entertainment, encouraging the same, shall be punished by fine not exceeding ten dollars; provided, however, that this section shall not apply to the operation of common carriers; to the driving of taxi cabs and public carriages in attendance upon the arrival or departure of such carriers; to the driving of private automobiles or other vehicles; to the printing and selling of Sunday newspapers; to the keeping open of hotels, restaurants, garages and drug stores; to the selling of gasoline; or to the giving of scientific, philosophical, religious or educational lectures where no admission is charged." R. S., 1916, c. 126, § 35, as amended by Laws 1929, c. 303. The 1929 amendment commences with the words "provided, however,".

The only change of significance to us in the years from 1929 to 1961 was the inclusion of grocery stores in the exempted categories in 1953. R. S., 1954, c. 134, § 38, amendment by P. L., 1953, c. 337. Other Sunday Closing Laws of interest are: Sales of motor vehicles and mobile homes, R. S., c. 134, § 38-B; local option for sports, bowling and moving pictures, R. S., c. 134, §§ 39, 40, 41; sales of liquor, R. S., c. 61, §§ 12, 27.

It is important to note that the only new categories in the 1961 Act covering Fantastic Fair and Brunswick Mill Outlet, on their own pleadings, are "bookstores" and "stores selling gifts or souvenirs." The other categories in which they claim membership, namely, drug stores and restaurants, have been exempt from operation of the Sunday Closing Law since 1929.

Fantastic Fair and Brunswick Mill Outlet are department stores within the common understanding of the term.

The description of Brunswick Mill Outlet in its brief describes as well the business of Fantastic Fair. Any differences are in detail and do not serve to distinguish the one store from the other. We quote from the brief:

> "The Respondent's business can properly be classed as a 'Department Store' as it has numerous departments within the area of its place of business, selling different types of merchandise. The Respondent operates a section of the store premises for the sale of drugs and medicines; a portion of its store premises is devoted to the sale of books, magazines and writing materials; in a section of the store premises there is located an area for food which is cooked and consumed upon and within the premises of the Respondent; sections of the store premises are devoted to the selling of souvenirs and gifts, and as indicated by the pleadings, the Respondent readily admits that in addition to the foregoing items of merchandise and food offered for sale on the premises, there were also other articles offered for sale in various sections of the store premises in the category of clothing, wearing apparel, furniture, toys, hardware, electrical supplies, and other general merchandise."

A department store is in substance several stores at one location and under one name. It is well known that departments are often "leased" and are not in fact operated by the store management, although under its name. In terms of the Sunday Closing Law, a department store may well include a restaurant, a drug store, a book store, and a store selling gifts or souvenirs, or any one or more of such types of business. The several departments need not be kept open at the same hours or on the same days. Assuming a reasonable classification of business operations in the statute, there would seem to be no reason for not applying the statute category by category to the departments in the stores operated by the respondents.

The test is what store or stores, that is to say, what department or departments, did Fantastic Fair and Brunswick Mill Outlet keep open on Sunday for the transaction of business.

The bite of the cases comes from the sale of clothing, wearing apparel, furniture, toys, hardware, electrical supplies, and general merchandise. We do not associate such commodities with a store (or with a department in a department store) of the exempt categories in which Fantastic Fair and Brunswick Mill Outlet seek refuge. The difficulties inherent in the problem are not, however, thus completely solved.

Is Fantastic Fair a "drug store"? We answer in the negative. The term "drug store" obviously does not describe in black and white what is or is not sold in such a store. It is common knowledge that many goods are sold in drug stores that bear no relation to drugs or medicines. The soda fountain, the candy counter, the magazine rack are every day examples.

The modern drug store may indeed approach and sometimes is in fact a department store. It does not follow, however, that a department store selling some of the products commonly sold in a drug store thereby gains the Sunday exemption of the "drug store." There is a solid distinguishing feature about a drug store, namely, the business of compounding drugs and preparing medicines on prescription by a trained and licensed pharmacist.

On the record, it may fairly be inferred that neither Fantastic Fair nor Brunswick Mill Outlet was in the business of an apothecary. It follows for this reason alone that neither establishment was a drug store. This is not to say that a department in a department store may not qualify as a drug store. The New Jersey Supreme Court, in passing upon this issue, said:

> "The Pharmacy Act itself R.S. 45:14-32, N.J.S.A., defines the words 'pharmacy' and 'drug store' as an 'establishment or place of business which, under the provisions of this chapter, is required to be operated or managed at all times by a registered pharmacist.' This language cannot be said to preclude a separate department in a general department store from being classed in such a category and in our judgment nothing in the entire act could lead to such a determination. It is common knowledge as well as disclosed by the record that many drug stores in this State are department stores to a greater or less degree." *Packard Bamberger & Co.* v. *Board of Pharmacy,* 48 A. (2nd) 199, at 201. Aff'd, 51 A. (2nd) 239.

We find, as we would expect, legislation strictly guarding the public against the unqualified pharmacist and regulating the business of the apothecary.

R. S., c. 68,

> "**Sec. 14. Business of apothecary.** — No person shall within the limits of this state conduct the business of an apothecary or any part thereof or sell or offer for sale any drugs or medicines, or display any drugs or medicines, drug store fittings or furnishings or any sign recognized as peculiar to drug stores such as pharmacy, apothecary, drugs, drug store, druggist, druggist sundries, drug sundries, medicine, medicine store or any other word or words of similar or like import to give the appearance of an apothecary store, or claim to be or represent himself to be an apothecary, or employ or permit advertising of any character which would convey such impression, unless the same is placed and kept under the personal control and supervision of a registered apothecary; but such store may be under the charge of a qualified assistant during the temporary absence of such registered apothecary."

The hard core of the "drug store"— without which it is not entitled to the name — is the business of the apothecary.

Fantastic Fair and Brunswick Mill Outlet are then not "drug stores." It will be time enough to determine with more precision what may or may not be sold within the fair meaning of the term "drug store" when and if the respondents, or either of them, comply with the statute covering registered pharmacists. "Drug store" is a "shorthand" description of what we in our community life have with reason come to recognize as a particular type of retail store differentiated from, let us say, the grocery, the bakery, the hardware, and the clothing store. We recognize, as we have indicated, that the "drug store" in addition to its strict function as an apothecary shop sells other goods and furnishes other services.

In solving the difficulties readily understood in drawing a line to mark the bounds of a "drug store," we need not blind ourselves to that which is apparent. In brief, the clothing, hardware, and electrical appliance businesses, and of course other businesses, do not come within the reasonably established and understood limits. Like principles are applicable in consideration of other exempt categories.

The term "restaurant" requires no extended discussion. There can be no confusion upon the question whether Fantastic Fair or Brunswick Mill Outlet conducts a "restaurant." We know from our common experience that tobacco, candy, and other small articles are sometimes available at a restaurant. The character of the enterprise, however, is not thereby altered from that of restaurant. Again, we do not find, nor do we need to find, a precise line between what is and what is not a restaurant.

"Book stores" and "stores selling gifts or souvenirs" are categories first introduced in the 1961 Act. Whatever else they may sell, they do not include the sale of clothing, hardware, electrical appliances, and the like. A "book store" is a store selling books, and related articles; it is not a drug store, a restaurant, a grocery store, or a hardware store.

Much is made by the respondents of the uncertainty of the term "stores selling gifts or souvenirs." We find in every sizeable community a "gift shop" or a "souvenir shop." The type of goods included within the description is familiar to us. Any article — hardware or clothing — may of course be purchased for the purpose of a gift. In like manner, any article in a "gift shop" may be purchased for the buyer's own use. It is not the use to which the article is or may be put that determines the category of the store, but the nature and kind of merchandise available. Hardware, clothing, or electrical appliances are not the type of merchandise we associate with the gift and souvenir stores.

The respondents carry the argument with reference to "stores selling gifts or souvenirs" beyond the edge of fair meaning. They say in substance that a store selling gifts or souvenirs is by the statute unrestricted in its sales of other goods. We do not think the language compels the conclusion that a store selling souvenir post cards on Sunday may tack on a line of hardware, or clothing, or electrical appliances. Such a construction would completely destroy all reasonable meaning of the provisions exempting certain types of business.

In broad strokes by categories of stores and not by listing a myriad of commodities, our Legislature has lifted the general ban on Sunday sales in certain areas in which the respondents seek to operate. Passing for the moment the constitutional issues, in our opinion, the statutory language is sufficiently definite to enable a reasonable person in the business world to know whether his store or enterprise falls within one or more of the categories of restaurant, drug store, book store, and stores selling gifts and souvenirs. Whatever may be the difficulties in determining whether given goods may reasonably be found and sold in a "drug store," or a "book store," or in "stores selling gifts or sou-

venirs," there can plainly be no question that clothing, hardware, and other types of merchandise which the respondents sold on Sunday may not be so considered.

Our Legislature closes all businesses, except works of necessity or charity, and then permits the operation of certain businesses. An alternative control of Sunday sales may be obtained by prohibiting the sale of all except specified commodities. The difference in approach does not determine whether the one is good or the other bad. In either case, whether by categories of stores or by a list of exempted goods, a Legislature is dealing with commodities and the sale of goods. The judgment of the Legislature that permissive sales on Sunday may reasonably be stated by description of the business or enterprise is not lightly to be judged an unreasonable method of regulation.

Fantastic Fair and Brunswick Mill Outlet may fairly be said to assert that each is several stores of the named categories. The restaurant department surely qualifies as a restaurant; the book department, as a book store; and the gift and souvenir departments, as a store selling gifts or souvenirs. So likewise the drug department, if there were compliance with the statutes, *supra,* would qualify as a drug store.

Neither respondent department store on the record experiences difficulty in separating and distinguishing one line of business from another. We may well ask why should not a department store, if the owner so chooses, keep open on Sunday the departments or "stores" within the exempt categories and close the non-exempt departments.

Under the Act we look to the store as it is kept open on Sunday. Whether Fantastic Fair or Brunswick Mill Outlet is a department store with a wide variety of goods for sale on six days a week is not material. On Sunday, it must be a restaurant, drug store, book store, or a store selling

gifts or souvenirs. No other classifications under the circumstances are applicable. The department store is not limited to one class; it may qualify in two or more. It must not, however, be a hardware or a clothing store. In short, it must close the departments which another storekeeper could not operate on Sunday for such purposes.

Under this construction of the Act the department store is not penalized for its size. It is not forced to close because some of its business taken alone would be non-exempt or because the store as a whole does not come within the fair meaning of any category or categories described in the statute. The department store may thus compete on Sunday with the exempt store; but not with the closed store. Further, the kinds of commodities which may be sold on Sunday are restricted to the kinds permitted by the Legislature. In like manner the drug store, grocery store or other exempt store is afforded no protection by the Act if it offers for sale on Sunday commodities essentially unrelated to the principal and exempt line of business and which are ordinarily and customarily offered for sale in stores not exempted by the Act.

Fantastic Fair and Brunswick Mill Outlet kept open clothing and hardware stores on the Sunday in question. It is unnecessary to determine precisely what other types of business each conducted. It is enough that each did not confine itself to the exempt categories and accordingly each is guilty of violating the Sunday Closing Law.

The respondents are harmed by the application of the Sunday Closing Law as we have interpreted it. The constitutional issues raised by them must therefore be considered. We keep in mind the often quoted statement of Justice, later Chief Justice Fellows.

"In passing upon the constitutionality of any act of the Legislature the court assumes that the Legis-

lature acted with knowledge of constitutional restrictions, and that the Legislature honestly believed that it was acting within its rights, duties and powers. All acts of the Legislature are presumed to be constitutional and this is a 'presumption of great strength.' *State v. Pooler,* 105 Me. 224, 238; *Laughlin v. City of Portland,* 111 Me. 486; *Village Corporation v. Libby,* 126 Me. 537, 549. The burden is upon him who claims that the act is unconstitutional to show its unconstitutionality. *Warren v. Norwood,* 138 Me. 180. Whether the enactment of the law is wise or not, and whether it is the best means to achieve the desired result are matters for the Legislature and not for the court. *Kelley v. School District,* 134 Me. 414; *Hamilton v. District,* 120 Me. 15, 20." *Baxter* v. *Waterville Sewerage District,* 146 Me. 211, 214, 79 A. (2nd) 585.

The pertinent constitutional provisions are:

" . . . nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." Fourteenth Amendment Federal Constitution.

Maine Constitution, Art. I (equal protection and due process), and Sec. 13 ("The laws shall not be suspended but by the legislature or its authority.")

The respondents strongly urge that the Sunday Closing Law is unconstitutional, in the words of the Brunswick Mill Outlet brief, " . . . for the reason that the same is vague, uncertain and ambiguous, and that ordinary businessmen could not interpret the plain meaning of the law from a reading thereof." We have seen that the respondents are not within the exempt categories in at least part of their operations. In reaching this conclusion we necessarily have been satisfied that the statutory classes in which the respondents assert they are included meet the test of constitutionality.

The Legislature in enacting the 1961 Sunday Closing Law clearly intended to retain a day of rest and recreation with enlarged bounds of permissible business activity on Sunday to meet the conditions of today. The Act reflects a judgment by the Legislature that with the changing times the Sunday laws of a generation past required revision. We are here concerned only with the Sunday provisions of the statute.

The governing rules were stated and applied in the recent case of *Swed, et al. v. Bar Harbor,* 158 Me. 220, 182 A. (2nd) 664, in which we held an ordinance invalid insofar as the regulation of "bric-a-brac, linen stores" were concerned. The court said, at p. 226:

> "The highest court ruled in *United States v. Harris* (1954), 347 U.S. 612, 617, as follows:
>
> 'The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.
>
> 'On the other hand, if the general class of offenses to which the statute is directed is plainly within its terms, the statutes will not be struck down as vague, even though marginal cases could be put where doubts might arise - - - And if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute this Court is under a duty to give the statute that construction. - - ' "

and again, at p. 227:

> "The perplexity of the instant case will be seen as plainly distinguishable from the predicament accorded such a tolerant construction in *McGowan v.*

*Maryland* (1961), 366 U.S. 420, 428, where the court commented:

'Another question presented by appellants is whether Art. 27, § 509, which exempts the Sunday retail sale of "merchandise essential to, or customarily sold at, or incidental to, the operation of" bathing beaches, amusement parks, et cetera in Anne Arundel County, is unnecessarily vague. We believe that business people of ordinary intelligence in the position of appellants' employer would be able to know what exceptions are encompassed by the statute either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation at a nearby bathing beach or amusement park within the county. - - - Under these circumstances, there is no necessity to guess at the statute's meaning in order to determine what conduct it makes criminal. - - - ' "

See also *Connally* v. *General Construction Co.*, 269 U. S. 385, 391; *State of Maine* v. *Munsey*, 114 Me. 408, 410, 96 A. 729; *State* v. *Seaburg*, 154 Me. 210, 145 A. (2nd) 559.

In the instant case the categories of interest meet the constitutional test of *Swed, et al.* v. *Bar Harbor, supra.* They are general in nature with a possibility of marginal cases which, in our view, do not destroy the usefulness of the definitions. In any event the hardware and clothing businesses, to name only two as examples conducted by the respondents, are plainly beyond the bounds of such categories.

In *State* v. *Hill* (Kan.), 369 P. (2nd) 365 (1962), cited by the respondents, the Kansas Court held a statute exempting from a Sunday ban "the sale of any drugs or medicines, provisions, or other articles of immediate necessity" void under the due process clause. The decision was based on uncertainty in the meaning of "other articles of immediate necessity." The court had no trouble with "drugs or medicines," and said with reference to "provisions" that the stat-

ute might be sustained notwithstanding there might be marginal cases. In *State v. Katz Drug Co.* (Mo.), 352 S. W. (2nd) 678 (1961), the Missouri Court, in reaching the contrary result and upholding a like statute, had no difficulty with either "drugs or medicines," or "provisions."

In our view of the term "works of necessity or charity" meet the test of constitutionality. The words have been in our statute since 1821. See *State v. Morin, supra* (the drug store case). The real interest for us of both the Kansas and the Missouri cases lies in the application of the vagueness rule to "drugs or medicines" and "provisions."

In *G. I. Surplus Store, Inc. v. Hunter* (N. C.), 125 S. E. (2nd) 764, 769 (1962) cited by Brunswick Mill Outlet, the Act prohibited the selling at retail of specified commodities "excluding novelties, toys, souvenirs, and articles necessary for making repairs and performing services." The court, in holding the Act was unconstitutionally vague, uncertain and indefinite, said:

> "Since the 1961 Act imposes no general ban on business activities or upon the sale or offering for sale of articles of property other than those in the specified categories, the exceptive provisions necessarily refer to articles within the specified categories. Under what circumstances may articles within the specified categories be considered novelties or toys or souvenirs? . . . Neither the nature of the repairs to be made nor the character of the services to be rendered is defined. Nor is there any reference to the time when such repairs are to be made or services performed."

Our problem is quite different from that before the North Carolina court. The question is not whether a particular item banned for Sunday sale is a toy, or whether particular goods may be sold for particular uses of making repairs, or in the performance of services. It is whether a given store (or department) comes within an exempt category.

We are convinced that reasonable men in the business world will understand from the Act whether they are running a drug store, a restaurant, a book store, or a store selling gifts or souvenirs. The possibility of marginal cases does not destroy the scheme for controlling business on Sunday established by the Legislature. We need not hold the statute violates due process for lack of a provision spelling out that such stores shall not sell hardware, for example. Fantastic Fair and Brunswick Mill Outlet fail in their attempt to have the Act held unconstitutional in its application to them for lack of due process.

The second constitutional issue is whether the statute violates the "equal protection" clause. The judgment of the Legislature upon restrictions placed on Sunday business controls, unless the restrictions are plainly discriminatory or plainly arbitrary.

Without question the Legislature could have banned all business activity on Sunday, excepting "works of necessity or charity." That the issue here in view of the general ban is in terms of exemptions and not restrictions does not make inapplicable the general principle. Is the closed business discriminated against by the exemption? Is the exempt classification of the particular business plainly arbitrary and without reason when matched against the closed business? *State* v. *Mitchell*, 97 Me. 66, 53 A. 887; *State* v. *Dodge,* 117 Me. 269, 104 A. 5; *In re Milo Water Co.,* 128 Me. 531, 149 A. 299; *State* v. *King,* 135 Me. 5, 188 A. 775; *Boothby, et al* v. *City of Westbrook, et al.,* 138 Me. 117, 123, 23 A. (2nd) 316.

To avoid confusion we must at all times keep before us the exemptions from the Sunday closing in which the respondents have a legitimate interest and set aside those not touching the present issues. Fantastic Fair and Brunswick Mill Outlet are concerned with "restaurants," "drug stores," "book stores," "stores selling gifts or souvenirs," and, on

the constitutional issues only, with "retail monument dealers," "automatic laundries," "grocery stores," "greenhouses," "roadside stands engaged in sale of farm produce or dairy products," "ship chandleries," and "marinas."

It is apparent that the remaining exemptions do not affect the business of the respondents. In any event, such exemptions cannot be said to result in discrimination against them or a denial of the equal protection of the laws.

> "It is fundamental that no one will be heard to question the constitutionality of a statute unless he is adversely affected by it." *State* v. *Hurliman* (Conn.), 123 A. (2nd) 767 (1956).

What Fantastic Fair and Brunswick Mill Outlet are saying in substance is that there is no reasonable ground for permitting stores in exempted categories in which they are interested to keep open and for denying a like privilege to their department stores. We have chosen to "break down" the department store into its several departments and to treat each department as a store for purposes of the Sunday Closing Law. The issue may then be put in these words: Does a statute which permits a drug store, a book store, or a store selling gifts or souvenirs discriminate in violation of the equal protection clause against, for example, a clothing, a hardware, or a furniture store? In short, may a line between Sunday opening and Sunday closing be reasonably drawn between such types of business enterprise?

In our view such a classification is not unreasonable. The purpose of the Sunday Closing Law is to preserve a day of rest and recreation with business and other activities limited to meeting the objective. Obviously the test of "works of necessity or charity" is not the measure adopted by the Legislature. Legislators may, however, reasonably determine that the permitted businesses meet the reasonable needs of the day and that the prohibited businesses, namely, other businesses not within "works of necessity or

charity" would serve no useful purpose and would destroy or tend to destroy the desired opportunity for rest and recreation.

The Legislature in making the exemptions may properly have considered not only the needs of our citizens but as well the needs of the thousands who make Maine their vacationland. There is no reason for judges to blind their eyes to the importance of the tourist to the economy of the State and to his particular Sunday needs.

On the charge of discrimination in favor of "retail monument dealers" and "automatic laundries," it is sufficient to say that in no way are the respondents harmed by the exemptions. There is not the slightest suggestion that any business in which the respondents have engaged on Sunday is competitive with or is reasonably to be classified with these exemptions. If the two exemptions, or either of them, were held in a proper case to be unconstitutional, we do not doubt that the remainder of the Sunday Closing Law would be unaffected by such a ruling. See *Swed, et. al.* v. *Bar Harbor, supra.*

"Ship chandleries" in a degree may, it is true, compete with hardware stores. We cannot say, however, that the Legislature may not reasonably permit "ship chandleries" to keep open for the benefit of those who seek recreation on our lakes and coast. The incident of possible competition does not necessarily outweigh the need served by the exemption. The exemption of "marinas" is analogous with the exemption of the garage and service station. Again, in these exemptions relating to boating, the respondents have shown no harm other than, as we have said, the possibility of competition from "ship chandleries."

We conclude, therefore, that the exemptions under the Sunday Closing Law do not in a constitutional sense discriminate against the respondents. The classifications are

reasonably established to accomplish the desired objectives and apply equally to all members of the class. The respondents fail to establish a denial of equal protection of the law. *Kotch* v. *Board of River Port Pilot Com'rs*, 330 U. S. 552, 67 S. Ct. 910, 912 (1947); *Williamson* v. *Lee Optical of Oklahoma*, 348 U. S. 483, 75 S. Ct. 461, 464 (1955), "The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." Annot. 46 A. L. R. 290, 119 A. L. R. 752, 57 A. L. R. (2nd) 969 — Sunday Law — Discrimination; 50 Am. Jur., *Sundays and Holidays*, § 11; 83 C. J. S., *Sunday*, § 7.

We recognize that in several cases cited by the respondents Sunday Closing Laws have been held invalid under the equal protection clause in situations not unlike in general that existing here. A like conclusion is not, however, in our judgment required on a fair interpretation of our 1961 Act. We comment upon some of the cases so cited.

In *City of Mt. Vernon* v. *Julian* (Ill), 17 N. E. (2nd) 52, 119 A. L. R. 747 (1938), the Illinois Court held invalid an ordinance "where a community grocery store which sold groceries, tobacco and other articles was required to close, but a tobacco store and a confectionary store selling the same products were permitted to open." (Quoted from *Humphrey Chevrolet* v. *City of Evanston, ante.*) The court found these and other instances in the exemptions "to be entirely arbitrary, without relation to the public, health, safety, morals or welfare." With this we may agree, but it is not the case before us. Here, for example, the drug store is classified apart from the furniture store and the store selling gifts or souvenirs, from the clothing store.

In *Humphrey Chevrolet* v. *City of Evanston* (Ill.), 131 N. E. (2nd) 70, 57 A. L. R. (2nd) 969 (1956), a Sunday closing ordinance prohibiting all retail and wholesale business activities on Sunday, but exempting the sale of certain commodities from the operation of the law, was held not un-

reasonably discriminatory as against an automobile dealer, where no one was permitted to sell automobiles on Sunday. The exempt commodities included drugs and medicines and other articles which the court considered could "certainly be distinguished from the sale of new and used automobiles." A like distinction exists in the instant cases between the exempt and the restricted businesses.

In *Elliott* v. *State* (Ariz.), 242 P. 340, 46 A. L. R. 284 (1926), the Arizona Court, in holding an ordinance invalid, said at p. 342:

> "Let us apply this test to the ordinance in question. It is evident from its language that it is not a case of a general cessation from labor with special exemption for reasons of necessity or charity, but rather a special inhibition placed upon certain otherwise praiseworthy and legitimate businesses with a general exemption to all other classes."
>
> \* \* \* \* \* \* \* \* \*
>
> "For the same reasons we cannot see why it is a legitimate discrimination to close groceries, shoe stores, and hardware stores, while allowing jewelers, dealers in secondhand goods, and tailoring establishments to remain open without restriction; nor does it appear on any theory we can conceive that pawnbrokers and photographers are engaged in works of necessity and charity when butchers and dealers in fruit or vegetables are not.
>
> "We are of the opinion that the ordinance in question shows on its face it is not a general 'Sunday closing" ordinance with reasonable exceptions, but a special one, aimed without any apparent legitimate reason at certain named businesses, and it does, therefore, in effect, grant special privileges and immunities to certain classes of citizens of the state, while, without legal excuse denying them to others."

In our cases we have a general ban on Sunday business with exemptions in categories meeting not strictly "neces-

sity or charity" as suggested by the Arizona Court, but the reasonable needs of the day.

In *Henderson* v. *Antonacci* (Fla.), 62 So. (2nd) 5 (1952); *Kelly* v. *Blackburn* (Fla.), 95 So. (2nd) 260 (1957), and *Courtesy Motor Sales* v. *Ward* (Ill.), 179 N. E. (2nd) 692 (1962), statutes were held void under the equal protection clause on attack by automobile dealers who were prohibited from selling on Sunday by general restriction in Florida and a special statute in Illinois. In *Henderson* v. *Antonacci, supra,* Justice Drew of the Florida Court, in a concurring opinion also considered the statute was invalid for vagueness. We reach the contrary conclusions on the statute before us.

In *Broadbent* v. *Gibson* (Utah), 140 P. (2nd) 939 (1943) and *Gronlund* v. *Salt Lake City* (Utah), 194 P. (2nd) 464 (1948), the Utah Court in *Broadbent* held unconstitutional a statute with a general closing provision exempting certain businesses or occupations, as in our Act, and in *Gronlund* a general closing Act with exemptions of named commodities. In *Broadbent* the court found the statute permitted the sale by persons of articles which others similarly situated were prohibited from selling. Under the statute, for example, the confectionary store could remain open to sell confections while a grocery store selling the same articles must close. This situation does not exist under the classifications in our Act.

Lastly, the respondents contend that the local option provision renders the 1961 Sunday Closing Law unconstitutional. In Brunswick the voters did not approve any additional exemptions. In South Portland the time for a local option vote had not arrived when the case was commenced.

Through the exercise of local option a town or city may extend but not limit the places of business exempt from

closing under the 1961 Act. In brief, a given business may be closed on Sunday in Town A under the Act and may be open in the neighboring Town B.

The creation of additional exemptions by a municipality obviously may raise constitutional issues of due process and equal protection. That these may flow from the exercise of local option does not destroy or render invalid this portion of the 1961 Act. We need not anticipate unlawful or unconstitutional action under the local option section.

It is entirely possible that the merchant in Town A whose store must close may find his competitor in Town B lawfully doing business on Sunday. This competition seemingly unfair is not, however, a sufficient reason to deny the people of either Town A or Town B the privilege of deciding under the 1961 Act what restrictions on Sunday business they desire.

The Sunday Closing Laws rest upon the police power of the State. In turn the State may grant to municipalities the right to exercise the police power of the State to such an extent and with such limitations as it may decree.

Conditions with reference to the Sunday closing problem may well differ from town to town. Limitations appropriate to an inland community may be unsuited, let us say, to a sea coast town in a resort area. The analogy with local option for Sunday motion pictures and bowling is apt. Town X may permit and its neighboring town prohibit the sale of liquor.

There is no suspension of the laws in violation of our Constitution. Maine Const., Art. I, § 13, *supra.* Nor is there an unconstitutional delegation of legislative authority. See *State* v. *Prescott,* 129 Me. 239, 242, 151 A. 426; *Searsport Water Co.* v. *Lincoln Water Co.,* 118 Me. 382, 389, 108 A. 452. The merchants of the town with *prohibitions*

against the activity in question have no complaint on the score of constitutionality.

Fantastic Fair makes the further point that the neighboring town of Scarborough under the Act was able to vote under the local option provision at a date earlier than the date available to the City of South Portland with the result that a competitor is enabled to keep open on Sunday. This is not a point of constitutional significance. There is no compelling reason advanced why the election must be held on a given date throughout the State or in contiguous towns. At most, the merchants and others in South Portland will be delayed a relatively brief period before having an opportunity of voting upon the issue. They have not been deprived of the benefits of local option by the fact that the election comes at a later date than that in Scarborough.

In revising the Sunday Closing Law to meet conditions of contemporary life, the 1961 Legislature sought to retain Sunday as a day of rest and recreation. This purpose, in our view, was accomplished in language which, fairly construed, meets the test of due process and equal protection of the laws and the test raised by the local option provision.

As we said at the outset, we have considered the 1961 Act with reference to Sunday only and not at all with reference to holidays.

Fantastic Fair and Brunswick Mill Outlet on the records were not stores within the exempt categories. Their attack on the constitutionality of the 1961 Sunday Closing Law fails.

The entry will be in each case

*Demurrer overruled.*

*Remanded for entry of judgment for the State and sentence.*

WEBBER, J. (CONCURRING)

I concur in the result. I am, however, unable to agree that the exemption afforded to "stores selling gifts or souvenirs" meets constitutional requirements. I find as much difficulty in ascertaining what is embraced within the classification as an unanimous court had in *Swed, et al.* v. *Bar Harbor,* 158 Me. 220. In that case the disputed classification was "bric-a-brac, linen stores." We held that "bric-a-brac as a category is too conducive to arbitrary abuse and unlimited cannot be utilized as a norm in a penal law. A person of ordinary intelligence would be habitually nonplused as to whether a store inventory included or was innocent of bric-a-brac." In my view the category "stores selling gifts or souvenirs" suffers from the same fatal weakness. In a broad sense whether an item of merchandise is or is not a gift depends entirely on the subjective purpose of the giver. In a more narrow sense, if we attempt to relate the exempt line of business to that which we ordinarily associate with the so-called "gift shop," we are still confronted by the fact that there are no accepted definitions of or understood limitations on the type of merchandise which may be properly considered as within the scope of the business. The court says in effect that "stores selling gifts or souvenirs" do not in any event sell "clothing, hardware, electrical appliances and the like." Common knowledge would suggest the contrary, unless we refer only to full and complete lines of such commodities. Who has not seen in the well stocked "gift shop," so-called, offering of women's and children's clothing, waffle irons, coffee percolators and the like? The variety of merchandise appears to vary with the imagination of the proprietor and his capital available for inventory. The objectionable statutory language does not even enjoy whatever descriptive limitation might have been afforded by use of the conjunctive "stores selling gifts *and* souvenirs" since it is couched

in the more sweeping disjunctive "gifts *or* souvenirs." I conclude that reasonable business men could not determine with reasonable certainty whether or not they were keeping their places open on Sunday to conduct in whole or in part an exempt or a prohibited business activity.

The respondents contend that if this be so, the entire statute must fall. It is therefore necessary to determine whether or not the offensive exemption is properly separable. On this question the cases are in conflict. In *Swed* we held the unconstitutional portion of the statute separable. The basic test is the intention of the Legislature and whether or not it may be fairly presumed that the Legislature would have enacted the statute, absent the objectionable portion. *State* v. *Webber,* 125 Me. 319, 323; *Fairley* v. *City of Duluth* (1921), 185 N. W. (Minn.) 390, 394; *Frost* v. *Corporation Commission* (1929), 278 U. S. 515, 49 S. Ct. 235, 239; *Eslin* v. *Collins* (1959), 108 So. (2nd) (Fla.) 889; 11 Am. Jur. 855, Sec. 161. A review of the history of the statute now before us discloses that we have long had a Sunday closing law, so-called, in effect. From time to time certain exempt categories have been added and that afforded to "stores selling gifts or souvenirs" is of most recent origin. I find here no intention of the Legislature to depart from its main objective of providing one day of rest in seven but exempting certain types of business out of consideration for the public necessity and convenience or the economic welfare of the state and its people. It is inconceivable to me that the Legislature would not have enacted the present statute, omitting only the objectionable exemption, had it deemed that its description of that particular exempt category would not meet constitutional requirements. I conclude that the offensive exemption is separable and the remainder of the statute continues in full force and effect. That being so, the respondents neither gain nor lose since they are admittedly guilty of

keeping open "departments" for the sale of full lines of clothing, hardware, electrical appliances and the like in violation of law.